case. R. I. R. L. I. Insurance. May it please the Court, this is R. L. I.'s appeal of a summary judgment order that erroneously concluded without any analysis that the Lehman's collection of the sum of $250,000 exhausted underlying limits of $700,000. Yeah, it seems to me that Lehman's best argument is this or the DCA opinion from 2001 Reliance Insurance v. Transamerica, which is materially different language it seems to me. Yes. To say that after the primary insurance is exhausted is not to say that the policy limits of all insurance have been exhausted. Would you agree with me that that is probably the best authority they have, but that's the material distinction? Exactly. I hate to be critical. You agree on both of those points. That's probably their best authority. That's probably their best authority and it's materially distinguishable in numerous ways. We have two distinct issues and they were conflated by the trial judge. The policy has two requirements. One, to maintain underlying limits of in this case $250,000 U.M. based on their selection. And two, two is to exhaust any applicable underlying insurance. Yeah, well it's to exhaust. It's better for you than that, isn't it? The text is it's to exhaust the policy limits of the insurance. Yeah, that's what exhaustion means. If that's what exhaustion means, then you've got a problem with Reliance Insurance. That case would appear to go against you, but there is materially different language here and the court in that case recognized that the language could matter. Yes, and so the phrase we use is underlying limits, which we define and we define it as the limits of all applicable underlying insurance and that keyword is applicable. You said the text is policy limits, right? I've got it right here. So it's not actually policy limits. I think we use underlying insurance is the defined term in the policy. And the endorsement is actually so simple. It's only two pages. It's a very simple, easy to read, user-friendly endorsement. We put defined terms in bold. We capitalize them. And the specific defined term that we use is underlying insurance. So it's a bold term, capital U, capital I, underlying insurance. And the policy clearly says this insurance applies only if A, the policy limits of any and all underlying insurance. Yet the policy limits. Yes, the policy limits. Yes. That's what has to be exhausted, isn't it? I'm just relying on English. Okay. Thank you. It's not to exhaust the insurance. It's the policy limits of the underlying insurance. Yes, and that didn't happen here. Now there is one sentence in a release that is not signed by Philadelphia. It's only signed by the layman's. And this release and settlement were the layman's release Philadelphia from a variety of claims, only one of which is UM. There's a sentence there that says, Philadelphia and the layman's agree that this settlement exhausts. Well, they can't do that. First of all, that document is not signed by Philadelphia. It's meaningless. Second, it's not an amendment to the Philadelphia policy that amends the limits of insurance to reduce them to $50,001. It's not an endorsement to the policy. It's nothing. It's a meaningless sentence and a document that is signed only by the layman's. Well, is it a retroactive amendment of the policy you're saying that does not apply? No, it doesn't. And even if it were somehow, the language as Judge Pryor pointed out, they just said exhaust in that agreement. They would have to say the policy limits of the Philadelphia policy are exhausted, which it doesn't say that. So it's a document not signed by Philadelphia, not representing their position. Earlier in the document, it says that Philadelphia continues to deny the standard sentence that this should not be an admission of liability. So there's that denial of liability clause earlier in the release. So it's just a settlement. It's not an admission. Nowhere in that release does it say Philadelphia accepts coverage. And there's one sentence, a vague sentence saying that Philadelphia and the layman's agree that this exhausts the policy. That's insufficient. It just does not exhaust the policy. So in your gray brief on page 25, without citing to any policy language, you say the RLI policy contains a specific definition of exhaustion, so it doesn't have the same ambiguity that precipitated the results in reliance. Can you point to me the specific definition of exhaustion you're talking about? That definition, we should not have used the term definition. We should have said the requirement, the exhaustion requirement, because it is what I just read. A, the policy limits of any and all underlying insurance, that's a defined term, have been exhausted by payment, payment of judgments or settlements. So Philadelphia did not pay $500,000. They paid $50,001. They settled. They did not pay the limits. But not in excess of the policy limits. So Philadelphia would have to pay $500,000 because it clearly says our condition of coverage, this insurance applies only if A, the policy limits, that's $500,000, the $500,000 policy limits of the Philadelphia policy, that's any and all underlying insurance, have been exhausted by payment of judgments or settlements. So $500,000. Ms. Ryan. If the question is one of definition, as Judge Branch raised, the policy itself doesn't define exhaustion, right? We'd really have to look at ordinary meaning of the term. So if we look, for example, at a dictionary, and a dictionary would say Black's Law Dictionary, the act of consuming or something until nothing is left, the pursuit of options until none remain, Webster's, to use up the whole supply or store of, expend or consume entirely, that's where we would look for definition of exhaustion, isn't it? I think we look at the policy, but to the extent that, Your Honor, I think the policy Can you show me where the term exhaustion is defined by the policy? Again, there's no definition, but it's a method. That was my point. Yes. I mean, we could, if Your Honor prefers to turn to the dictionary, that also works, because here, the $500,000 has not been consumed. The layman's did not collect it. They have not realized it. It was not paid to them. No check was issued to them. And $49,999, I'm just going to say $450,500 for the sake of brevity, but $450,000 plus or minus remains on the table, not tapped into, so it has not been consumed, as the dictionary would point out. And whether we look to the dictionary or whether we look to the policy method of exhaustion, either way, this was clearly not satisfied. I see I have the yellow, and I will speed my time. Okay. Thank you, Ms. Bryan. Mr. Russo? May it please the Court? Yes. Andrew Russo on behalf of John and Alicia Lehman. I think that the Court needs to take this whole thing in context of why we're here today. Right. This was a terrible accident. Sure. You know, the other driver deceased, didn't live through the accident. Mr. Lehman was seriously injured, very seriously injured. Right. His economic damages alone are approximately $900,000. Mr. Russo, what really I'm focusing on is the language of the policy. Would you agree with me that the reliance case is probably your best authority for defending the judgment of the district court? Well, for defending his opinion, maybe, but for defending his judgment, because we have alternative grounds for having the judgment affirmed, and that's what your honors are here to do. Did he get the judgment for the Lehman's right? We suggest that they did. But let me first address the statement that stood out to me, and I'll do it in this context. I've been defending insurance companies for almost 40 years, okay? And to say that this particular endorsement under this umbrella policy is easy to read is unbelievable to me. I'm going to tell your honors . . . Let me tell you, it's been a week of reading difficult to read insurance agreements for us, okay? So, there's nothing unusual about that. If you find me a case where they're easy to read, please let me know. I'd like that one on the calendar. Okay. Over the years, I have to admit they've tried, but they still . . . Insurance companies deliberately design these things to be difficult to parse, but . . . And I want to look at the policy and look at both of them, because you have to look at the excess underinsured motorist endorsement, along with the regular policy, the personal umbrella policy, to really be able to read it together. And one of your points was, well, is there a definition of exhaustive? Well, there's not. But there are some definitions in the main part of the policy that are kind of curious. And one of them, and one of the ones that I think are really relevant here, is the definition of basic policy or basic policy, and that's defined in the policy very clearly. I mean, I keep coming back to this, though. It seems to me that it's very clear, this part is clear, that the policy required for it to kick in, because this is excess insurance, right?  That the policy limits of any and all underlying insurance have been exhausted by payments of judgments or settlements. But policy, to exhaust the limits, is different from exhausting insurance by judgments or settlements. And when I look at this, it does not appear to me that this is a case where the policy limits were exhausted. Well, but that was not what they were arguing initially in the lawsuit. And that's what Judge Moody was focused on when he made his ruling. They were saying they didn't meet the threshold of . . . You're not saying that the argument they're making about that has been waived or forfeited? I mean, you've never argued that. No, I'm not. I'm just saying what was presented to Judge Moody was $250,000, $250,000, $250,000, from their disclaimer of coverage to when they actually did their declination till when they drafted their lawsuit. But their position consistently has been that the policy limits have not been exhausted. Well, no, if you look at their original motion for summary judgment, they don't say that. What they say in that, in their motion for summary judgment, okay, and their initial summary judgment, they just said they didn't meet the threshold of $250,000. And that was the issue . . . All in support of an argument that the policy limits of their underlying insurance have not been exhausted. Yes. Yes, Your Honor. I'm not disputing that. But they did not bring up this $500,000 till after he gave them an opportunity to come in and say, why shouldn't there be a judgment entered in front of the limits? And then Judge Moody just said, well, you asked for a declaration in the deck action for this, and I see that they've met that threshold. Therefore, I believe it's been exhausted. But the facts on the ground had changed, right? When the insurance company had filed the motion for summary judgment, they were pointing to, hey, $250,000 hasn't been satisfied because there had been no settlement yet. That's correct. So it was sitting there at $200,000. That is correct, Your Honor. Which was an easy case for them. Yes. At that point, they were making that argument. And so you came back and said, now we've settled for $50,001, so we have met the $250,000 threshold. So the insurance company was making a different argument in support of the same point, which is that the policy says you have to exhaust the policy limits of any underlying insurance. Correct?  But keep in mind, their argument was that Philadelphia policy didn't apply. And that's why you have- That's what Philadelphia said as well, right? That's the reason why they initially denied, why you had to sue and then you settled. Coincidentally, for 10% plus a dollar to get to the threshold. That is correct. That is correct. That was a battle that I had on two fronts, in two different- one in federal court, one in state court. And we had to fight that way and try to meet the threshold of what they were claiming. But if you read the policy in the endorsement, and that's what we're here about, it just says, we will pay only in excess of the uninsured motorist coverage required to be maintained under the required basic policies that's set forth in the declarations. Required basic policies as set forth in the declarations, and that was $250,000. Then they go on to- So they give with one hand, and now they want to try to take away with another hand by saying the policy limits of any and all underlying insurance have been exhausted by payment of judgments or settlements, right? So there they want to take it away. But if you look at the definition of underlying insurance, and actually they changed the definition from the main part of the policy. If you look at it in the endorsement, it says the required basic uninsured motorist policy as shown in the declarations, and any other applicable liability, uninsured or underinsured motorist coverage. So the required amount per the policy was $250,000. Again, they don't define required basic policies. Part of my argument is in addition to this one ground for which Judge Moody ruled upon, we raised these other grounds, and I'd like to go to those because I think those are important arguments for the court to consider. One is- Well, I mean really the only other ground you've got. They have an argument, as I understand it, that your clients did not satisfy the minimum coverage requirement. You have an argument against that, but we don't reach that if Judge Moody's wrong about the argument we've been talking about. You've got then an argument about whether the policy complies with Florida law. Correct. Which seemed to me clearly wrong because the statute that we're talking about expressly states that its parallel coverage requirement quote does not apply to any policy which does not provide primary liability insurance end quote. It's undisputed that the policy here provides excess, not primary liability insurance. So this statute that you're saying it doesn't comply with doesn't govern this policy. It does govern. It doesn't govern. By its own terms, it does not apply to an excess insurance policy. 627, 727-2, that second portion that was put in in 1984 addresses the rejection of excess UM coverage. Section one, it basically required a written rejection. Section two, which was added, addresses the issue of you don't have to have a written rejection. All you have to do is offer the policy. It did not say anywhere, and they have not presented any case law, to suggest that voids the public policy very strong in Florida that UM protection must be the reciprocal of liability protection. And that argument is supported throughout Florida law and I've cited many, many cases which stand for that proposition. So if you go to their policy and the reason why they don't want the public policy of Florida to apply is because they want to treat the umbrella policy differently for UM than they do for liability. Because this exact situation, and you indicated the Reliance case, this exact situation is taken care of and stated in the policy very clearly. If there is no underlying insurance, and it's called part three and part four of the required basic policies, they want to extract required basic policies from the endorsement and they can't do that. It is ambiguous because they refer to required basic policies throughout the UM endorsement and then if you go to the main portion of the policy, it just says this is what's going to happen if you don't have the required basic policies. If any of the required basic policies are not carried, we will only pay as though the basic policies had been carried or if they're terminated, we will pay as though the basic policies had never been terminated. And then it says if any of the limits of coverage carried under the basic policies are less than the minimum required limits listed in the declarations, we will pay only as though the basic policies had been carried with the full minimum limit of insurance. So it actually addresses this exact situation. It doesn't. You know, you didn't listen to what I said, counsel. I mean, look, that statute that you're talking about with parallel coverage just does not apply to any policy which does not provide primary liability insurance. And this is an excess insurance policy. That statute doesn't apply to it. Your Honor. Every case that you've cited is distinguishable on that ground. Respectfully, there's not a case that says that it doesn't apply to excess. I can read the statute. You don't have to have one. I mean, it couldn't be clearer. Well, all I can say with regard to Section 2 of 627.727, if you look at the legislative history in this, it basically just said all we're going to do is eliminate the need for a written rejection. It didn't say that the public policy of Florida, which is to provide for innocent victims, for people that are uninsured, for which approximately 40% of the drivers in Florida are underinsured, that is what they need to do. And that provision does not indicate that it destroys all the policies that they can just forget about the public policy of Florida and insert restrictions on UM in an excess policy that are more restrictive than the liability portion of the policy. It also goes on to one of the definitions in the policy, and again, you have to read policy as a whole, is they have self-insured retention. It defined self-insured retention means the amount shown in the declarations that anyone covered by this policy must pay for injury before we pay any amount under this policy. This amount shall be applied if the basic policies do not provide coverage for the occurrence, but coverage is afforded under this policy. Why is that provision put in there? Self-insured retention. That's what we're arguing in support of our position is that, at a minimum, they're trying to eliminate coverage under this for a premium was paid for this. It wasn't like we're asking for coverage that wasn't paid for. It was paid for. All we're asking is that they be applied. If, in fact, $50,000 was not collected, then we say, okay, well, their policy should not come into effect until that $50,000. The damages in this case greatly exceed that. And that's the basis of our argument. In addition to the policy being ambiguous because they use required basic policies throughout the endorsement, and then they want to extract that language from the endorsement saying it doesn't apply. So the ambiguities have to be construed against the insurer under these facts. Your Honors, thank you very much. Thank you, Ms. Russo. Ms. Ryan, you've saved some time for rebuttal. I want to address the point about the premium was paid for this coverage. Actually, no. The premium was quoted basically- Is that what we really want to get into today? No, I don't want to. It's just going to be a segue to the maintenance. We haven't talked about maintenance. And this case started as a maintenance case that the layman's did not maintain the required basic policies. And they didn't. They were supposed to maintain a required basic policy. Some might call it primary policy, but let's stick with our definitions and terms. A required basic policy with limits of $250,000. They did not have that coverage. On the MAFRA policy that covered their everyday vehicles, the truck that Mr. Layman drove every day- Let me ask you something simple, which is we don't really have to determine whether they satisfied minimum- We don't, other than it just sort of makes everything logical. Ms. Ryan, you might want to wait for me to finish my questions first, okay? And not interrupt because I wasn't finished. So we don't have to decide that if we think that they did not exhaust the policy limits, right? And would you agree with what I was saying about whether the policy complies with Florida law, that the statute that they're relying upon does not apply to an excess insurance policy? Yes, I apologize sincerely, Your Honor. Just a little excited to be here. I understand you're excited. But if both of those things are true, that's really the end of the story, isn't it? It is the end of the story. I would just elaborate a little bit on why. Okay, sure. Regarding there is no case that expressly states that umbrella policies are not subject to the parallel or reciprocal requirements, there is a case that strongly suggests that the way I interpret it, perhaps it's subject to interpretation. In that case, it's Nieves, and we've quoted it. And Nieves says that that amendment in 1984, that added section two, quote, for the first time explicitly exempted policies which do not provide primary liability insurance for specifically insured motor vehicles from the requirements set forth in subsection one. Now, the phrase used was the requirements. But in context, I interpret that, as you do, Your Honor, as the parallel liability coverage and UM requirements. So there is that case, and there's a structure of the statute. But even if we assume hypothetically that those parallel requirements are still in effect, this is not a scope limitation, such as an exclusion for a phantom vehicle. And this is not lower limits. The coverage amount is the same. This is simply a different way of satisfying the condition precedent to coverage with respect to exhaustion. And it makes perfect sense that in the UM situation, the insured can't pay themselves the gap. Whereas in the liability scenario, they can certainly pay the tort fees or the third, sorry, the insured tort fees or can pay the injured third-party claimant. They can pay them out of pocket. But the insured who's injured can't pay himself out of pocket. It really doesn't, wouldn't even make sense for the insured to absorb the gap in a UM situation. So they're not analogous. It's not a scope limitation in that parallel coverage doctrine does not apply. I heard some advice that Your Honor gave in earlier litigants that I did not have to use all of their time. And I actually feel that I've addressed the points that were raised. And I would urge the court to reverse because- Reverse and remand. Reverse and remand, yes. Thank you, Your Honor. Thank you. Let's move to our last case, our third case. I'm sorry. Okay.